779 Fed.Appx. 497
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 10th Cir. Rule 32.1.
United States Court of Appeals, Tenth Circuit.

UNITED STATES of America, Plaintiff - Appellee,
v.
Lev Aslan DERMEN, Defendant - Appellant.

No. 19-4047
|
Filed June 13, 2019

**Synopsis**
**Background:** Defendant and codefendants were charged with filing fraudulent claims with United States to obtain refundable fuel tax credits totaling over $511 million through their companies. The United States District Court for the District of Utah, Jill N. Parrish, J., denied defendant's motion for review of detention order and motion for reconsideration of detention order, 2019 WL 1200254, and defendant appealed.

**Holdings:** The Court of Appeals held that:

[1] defendant was not entitled to reopening of pretrial detention order;

[2] Court of Appeals had jurisdiction over defendant's appeal from order denying review of detention order;

[3] defendant was not entitled to automatic review of pretrial detention order based on alleged expiration of 90-day speedy trial period; and

[4] continued pretrial detention did not violate due process.

Affirmed.

**Procedural Posture(s):** Appellate Review; Bail or Custody Motion; Pre-Trial Hearing Motion.

West Headnotes (4)

[1] **Bail** 🔑 Hearing and determination
Defendant, who was Turkish national, was not entitled to reopening of pretrial detention order and reconsideration of prior finding that he presented flight risk, pending trial on charges for filing fraudulent claims with United States; district court characterized all but one of defendant's arguments as rehashing of same arguments and much of same evidence presented in initial motion for review of detention order, and single piece of new information, namely, newspaper article about statement from President of United States that he was working on extraditing Turkish national to Turkey, which defendant argued lessened concern that Turkey would not extradite him if he fled to Turkey, was contradicted by affidavit of official responsible for extradition requests to foreign countries, who declared that extradition treaty with Turkey did not require Turkey to surrender individuals for prosecution in United States, that Turkey had largely ignored extradition requests, and that Turkish leaders clearly stated intent not to extradite fugitives to United States. 18 U.S.C.A. § 3142(f)(2).

2 Cases that cite this headnote

[2] **Criminal Law** 🔑 Preliminary or interlocutory orders in general
Court of Appeals had jurisdiction over defendant's appeal from order denying review of pretrial detention order, due to alleged speedy trial violation, under appellate rule that authorized immediate appeal from order continuing pretrial detention or refusing to set bail, and statutory collateral order rule, which conferred jurisdiction on Court of Appeals to review certain orders that did not terminate litigation, but which nonetheless would be treated as final, insofar as orders resolved question of defendant's right to pretrial release, orders addressed important issue completely separate from merits of issues to be tried, and

Exhibit X

orders denying pretrial release were effectively unreviewable on direct appeal. 18 U.S.C.A. § 3164(c); 28 U.S.C.A. § 1291; Fed. R. App. P. 9(a).

1 Case that cites this headnote

[3]  **Criminal Law** ⟜ Delay caused by accused

**Criminal Law** ⟜ Preliminary or interlocutory orders in general

District court's attribution to defendant of pretrial delays caused by multiple continuances requested by codefendants and scheduling conflict, as basis for finding that 90-day speedy trial clock had not run, was reasonable, and therefore, defendant was not entitled to automatic review of pretrial detention order, in prosecution for filing fraudulent claims with United States, even though defendant was not free on bond and he had pursued speedy trial rights by objecting to second continuance; district court found that defendant's pursuit of speedy trial rights was neutral factor because his earlier pursuit of speedy trial was "inconsistent" and his objection to third continuance on speedy trial grounds was disingenuous, in view of trial counsel's self-imposed conflict with scheduled trial date, and interest in trying all defendants in single trial weighed heavily in favor of continuing trial, because case was incredibly complex, trial would likely last more than two months, and Government would have to call same witnesses and put on same evidence to support charges against each defendant. 18 U.S.C.A. §§ 3161(h)(6), 3164(c).

1 Case that cites this headnote

[4]  **Bail** ⟜ Right to Release on Bail

**Constitutional Law** ⟜ Duration

Continued pretrial detention of defendant, who was Turkish national, pending trial on charges for filing fraudulent claims with United States, based on findings that defendant presented high flight risk and that Turkish government would not extradite him back to United States, did not violate due process; although pretrial detention for period of approximately eleven

months was significant, it was not excessive under circumstances and was significantly less than pretrial detention periods that had been upheld in other cases, defense was responsible for most of trial delays, and evidence supporting defendant's continued detention as flight risk was compelling. U.S. Const. Amend. 5.

5 Cases that cite this headnote

**\*498**  (D.C. No. 2:18-CR-00365-JNP-BCW-3) (D. Utah)

**Attorneys and Law Firms**

Adam Elggren, Office of the United States Attorney, District of Utah, Salt Lake City, UT, Arthur J. Ewenczyk, U.S. Attorney's Office, Tax Division, Washington, DC, Leslie A. Goemaat, Appellate Staff, Civil Division, Department of Justice, Washington, DC, Elissa Hart-Mahan, Samuel Robert Lyons, U.S. Department of Justice, Tax Enforcement Division, Washington, DC, Stanley J. Okula, Jr., Alexander Patrick Robbins, John E. Sullivan, U.S. Department of Justice, Tax Division, Washington, DC, Richard M. Rolwing, Office of the United States Attorney, Tax Divsion, Columbus, OH, for Plaintiff - Appellee

Mark J. Geragos, Linda Moreno, Geragos & Geragos, Los Angeles, CA, Jon D. Williams, Jon D. Williams, P.C., Salt Lake City, UT, for Defendant - Appellant

Before PHILLIPS, KELLY, and EID, Circuit Judges.

## ORDER AND JUDGMENT [*]

Per Curiam

Lev Aslan Dermen appeals from the district court's order continuing his pre-trial detention. Exercising jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, we affirm.

### \*499  I. BACKGROUND

Dermen is one of five co-defendants charged with filing fraudulent claims with the government to obtain refundable fuel tax credits totaling over $511 million through their energy and fuel supply companies. The government alleges that

Dermen and the other defendants laundered and transferred most of the money to Turkey, where he owns property.

Dermen was arrested in California in August 2018 and has been detained since then. He was removed to Utah, where the charges are pending and where two other defendants were also being detained. His initial appearance was on September 24, 2018. After a hearing in October, the district court found that Dermen is a flight risk and upheld the magistrate judge's order detaining him pending trial. Specifically, the court found that he "has both the motive and ability to exit the United States without detection and abscond to a country [Turkey] that presently refuses to extradite to the United States," and that no condition or combination of conditions would reasonably assure his appearance at trial. Aplt. App. Vol. II at 520-21.

The court's flight-risk finding was based on evidence that, among other things, Dermen owns property and a yacht and has access to large bank accounts in Turkey; for several years before his arrest, he spent significant time in Turkey and funneled millions of dollars into its economy; he told several government witnesses that if he were ever criminally charged, he would flee to Turkey; and in 2017, after a California court issued a warrant to search his home in an unrelated case, he flew to Turkey the next day in a private plane owned by a Turkish bank and stayed there for several months, and he entered and exited the U.S. without creating any record of this travel with the American government. The court also noted that President Erdoğan has publicly committed not to honor extradition requests from the U.S. The court rejected Dermen's proposal that a "high-value bail package" and in-home detention supervised by a private security force would assure his appearance at trial, explaining that if his "risk of flight can be constrained only by constant supervision by private security personnel that are [willing to use] physical force, ... the appropriate means to accomplish that is pretrial detention." *Id*. at 519-20 (citation, internal quotation marks, and brackets omitted). And with respect to bail, the court found that the $10 million his family offered to pledge as security was "dwarfed" by the money he had wired to Turkey. *Id*. at 520. Dermen did not appeal the initial detention order.

The first indictment charged only Dermen and two of the codefendants. Their joint trial was initially set for October 29, 2018, but has been continued three times. None of them objected to the first continuance to February 11, 2019. In December 2018, after the government filed a superseding indictment adding charges against the codefendants, the district court ordered the parties to file briefs addressing several speedy-trial issues related to a possible rescheduling of the trial date. Dermen objected to any continuance and argued that if the court continued the trial a second time, 18 U.S.C. § 3164(c) mandated that the court reconsider his detention status and bail conditions. He also sought leave to file a renewed motion for release.

After a hearing, the court continued the trial to May 13, 2019. It excluded certain periods of delay from its speedy trial calculation (1) to accommodate counsel for one of the codefendants, who had a conflicting trial in New York; and (2) based on its findings that this case is complex and that, for over four months, no party had "zealously pursued a speedy trial," **\*500** *United States v. Vogl*, 374 F.3d 976, 984 (10th Cir. 2004). Aplt. App. Vol. III at 614-21. The court denied Dermen's request for reconsideration of his release, concluding that because of the exclusions the 90-day clock in 18 U.S.C. § 3164(b) had not run and the automatic review provision in § 3164(c) had not been triggered. The court indicated, however, that any defendant who disagreed with its determination could file a motion for release.

After filing an unsuccessful mandamus petition, Dermen filed a motion for release in the district court claiming that (1) regardless of the propriety of the initial detention, he had been held for more than 90 days of non-excludable time and was entitled to be released under § 3164(c); and (2) due process required his release. He also sought reconsideration of the detention order under 18 U.S.C. § 3142(f)(2) based on information he claimed was unavailable to him at the time of the detention hearing.

In the meantime, the government filed a second superseding indictment adding two new defendants, who filed a motion to continue the trial date to allow them adequate time to prepare. The district court held a lengthy evidentiary hearing on the motion to continue, Dermen's motions, and another detained defendant's motion for release. In an order ruling on all of those motions, the court recognized that the detained defendants' rights to a speedy trial and to pretrial release are in direct conflict with the government's interest in assuring their presence at trial and protecting the safety of the community, and it expressed concern that further trial delays may require the severance of certain detained defendants and require the court and the government to conduct substantially similar trials multiple times.

The court granted the motion to continue, primarily because of the complexity of the case, voluminous discovery, and

the government's addition of claims and defendants, but ordered that "[n]o further trial continuances shall be granted." Aplt. App. Vol. IV at 1143. Trial is now set to begin on July 29, 2019. The court noted that Dermen objected to the continuance even though his attorney had a conflict with the May trial date because he had agreed to represent another defendant in the same New York trial that counsel for one of the codefendants was involved in. The court concluded Dermen's objection was "an objection in name only" and was "only designed to further his case for pretrial release." *Id.* at 1140. The court excluded additional periods from Dermen's speedy trial calculation based on its balancing of the *Vogl* factors and its conclusion that his "commitment to a speedy trial" was "disingenuous." *Id.* at 1142.

The court then denied Dermen's motions for release and for detention review under § 3142(f)(2). As discussed more fully below, the court found that (1) he continues to be a flight risk; (2) no new information justified reconsidering the detention order; (3) the court was not required to reconsider his detention status under § 3164(c) because he has not been detained for more than 90 days of non-excludable time; and (4) due process does not require his release.

## II. DISCUSSION

### A. Legal Standards

Pre-trial release is governed by 18 U.S.C. § 3142. The key factors are the risk of flight and potential danger to the community or any other person. *See* § 3142(e)(1). The government has the burden of proof at detention hearings. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). It must prove flight risk by a preponderance of the evidence and dangerousness **\*501** by clear and convincing evidence. *Id.*

By statute, the factors relevant to a detention decision include the nature and circumstances of the charges; the weight of the evidence; the person's history and characteristics, including "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g).

"We apply de novo review to mixed questions of law and fact concerning the detention or release decision, but we accept the district court's findings of historical fact which support that decision unless they are clearly erroneous." *Cisneros*, 328 F.3d at 613. [1] "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted). "On clear error review, our role is not to re-weigh the evidence; rather, our review of the district court's finding is significantly deferential." *Id.* at 515-16 (internal quotation marks omitted).

### B. Arguments on Appeal

### 1. Denial of Motion for Detention Review under § 3142(f)(2)

[1] Dermen first contends that the district court erred by denying his request to reopen the detention hearing under § 3142(f)(2) and reconsider its finding that he is a flight risk. That statute allows a district court to reopen a detention hearing based on information "that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *Id.*

The district court denied Dermen's motion for a detention review, concluding that there is no new information that was unavailable to him at the time of the detention hearing that would justify reopening it. The court characterized all but one of his arguments as "rehash[ing] many of the same arguments and much of the same evidence that he presented in his initial motion for review of [the magistrate judge's] detention order." Aplt. App. Vol. IV at 1145.

The one piece of arguably new information Dermen provided was a newspaper article about President Trump's statement that the U.S. was "working on" extraditing a wanted Turkish national to Turkey. *Id.* at 1146 (internal quotation marks omitted). Dermen maintained that if the U.S. honored Turkey's extradition request, its relationship with Turkey might improve and Turkey might be more willing to honor extradition requests from the U.S., which would lessen the concern that Dermen could not be extradited back to the U.S. if he fled to Turkey. But the government submitted the affidavit of a U.S. official responsible for extradition requests

made to foreign countries, who declared that (1) **\*502** our extradition treaty with Turkey does not require Turkey to surrender individuals for prosecution here; (2) Turkey has largely ignored extradition requests and has granted only one in the last three years; and (3) Turkish political leaders have stated Turkey's intent not to extradite fugitives to the U.S. Based on the affidavit and its conclusion that Dermen's release would not be warranted even if Turkey were to resume extraditions to the U.S., the district court found that his "new information" did not justify reconsidering his detention status. *Id*. at 1146-47.

On appeal, Dermen does not contend that, other than the article, he presented new information to the district court that was unavailable to him at the time of the initial detention hearing. And, although he argues that the district court's finding that Turkey is not willing to comply with its extradition treaty with the U.S. is "just ... conjecture," Aplt. Mem. on Review of Detention at 8, and that the court should have granted release with high bail conditioned on constant supervision by a private security company, he does not challenge its finding that these and the other arguments he raised in his motion for a detention review are the same basic arguments he made at the detention hearing. Because he did not present new information to warrant reopening the detention hearing, we find no error in the district court's conclusion that he was not entitled to a detention review under § 3142(f)(2).

### 2. Automatic Review under § 3164(c)

Dermen also contends that the district court erred by rejecting his claim that, regardless of the propriety of his initial detention, he must be released under § 3164(c) because he has been held for more than 90 days of non-excludable time. We disagree, because Dermen has not shown that the district court's speedy trial exclusions and its finding that most of the trial delays are attributable to him are clearly erroneous.

#### a. Jurisdiction

 **[2]**   As a threshold matter, we note that it is well settled that the denial of a motion seeking dismissal of an indictment on speedy trial grounds is not reviewable before final judgment, *see United States v. MacDonald*, 435 U.S. 850, 857, 863, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), but this court has not yet addressed whether the denial of a motion for pretrial release under § 3164(c) based on an alleged speedy trial violation is immediately appealable. And, although the government "does not dispute" our jurisdiction, Resp. in Opp'n, at 2

n.1, we cannot simply assume that we have jurisdiction to reach the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Chance v. Zinke*, 898 F.3d 1025, 1029 (10th Cir. 2018). We conclude that Dermen's appeal of the district court's § 3164(c) ruling is authorized by Fed. R. App. P. 9(a) and that we have jurisdiction under § 3145(c) and 28 U.S.C. § 1291.

Under Rule 9, a criminal defendant may immediately appeal an order continuing his pretrial detention or refusing to set bail. *See also Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (observing that the "proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail and appeal to the Court of Appeals from an order denying such motion"); 10th Cir. R. 9.2 (establishing procedures for pretrial bail appeals). The language of the rule is broad, authorizing immediate appeals of orders "regarding the release or detention of [the] defendant." Fed. R. Crim. P. 9(a)(1). An order denying review of detention under § 3164(c) is plainly an order "regarding the [defendant's] release or detention." We are **\*503** not aware of any Tenth Circuit decisions expressly addressing whether—apart from our authority under Rule 9— federal courts of appeals have jurisdiction to review such orders before final judgment, but we now conclude that we do.

Section 3145(c) provides that "[a]n appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by" 28 U.S.C. § 1291, which gives courts of appeals jurisdiction over "final decisions of the district courts." Under the collateral order rule, however, we have jurisdiction to review certain orders "that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (citations and internal quotation marks omitted).

For a non-final order to be immediately appealable under the collateral order rule, the order must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits, and (3) be effectively unreviewable on appeal from a final judgment." *KCOM, Inc. v. Emp'rs Mut. Cas. Co.*, 829 F.3d 1192, 1199 (10th Cir. 2016). "[T]he class of cases capable of satisfying this stringent test should be understood as small, modest, and narrow." *United States v. Wampler*, 624 F.3d 1330, 1334 (10th Cir. 2010) (internal quotation marks omitted). "The justification for immediate appeal must ... be sufficiently

strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus., Inc. v. Carpenter,* 558 U.S. 100, 107, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009). Accordingly, the second condition to application of the collateral order rule requires that the issues be not just separate from the merits, but "important." *Cohen v. Beneficial Indus. Loan Corp,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). And the third condition will not be met merely because "a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment. ... Instead, the decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." *Mohawk Indus.,* 558 U.S. at 107, 130 S.Ct. 599 (citation and internal quotation marks omitted).

The collateral order doctrine is "interpreted ... with the utmost strictness in criminal cases." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 799, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) (internal quotation marks omitted); *see also DiBella v. United States,* 369 U.S. 121, 126, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962) ("[T]he delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law."). The Supreme Court has recognized that three types of interlocutory orders —orders denying motions to reduce bail or to dismiss an indictment on double jeopardy or speech or debate grounds —are immediately appealable in criminal cases as collateral-order exceptions because each "involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Flanagan v. United States,* 465 U.S. 259, 266, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (internal quotation marks omitted). With respect to orders denying motions to reduce bail, the Court further explained that "[t]he issue is finally resolved and is independent of the issues to be tried, and the order becomes moot if review awaits conviction and sentence." *Id.* (citing *Stack*).

Orders denying pretrial release under § 3164(c) are akin to those denying reductions **\*504** in bail and satisfy the three-part collateral-order test for the same reasons non-reduction orders do: they conclusively resolve the question of the defendant's right to pretrial release; that question is an important issue completely separate from the merits of the issues to be tried; and orders denying pretrial release are effectively unreviewable on appeal from a final judgment. The fact that § 3164(c) motions are rooted in alleged speedy trial violations does not make them more like a non-appealable order denying a motion to dismiss an indictment

on speedy trial grounds than an immediately appealable order denying a reduction in bail. A court in an ordinary post-judgment appeal can vacate a conviction and order dismissal of the underlying charges if it finds a speedy trial violation, but there is no meaningful post-judgment remedy for an erroneous denial of a motion for pretrial release, and Congress' intent in enacting § 3164(c) would be frustrated if an appeal could be taken only after the jury had rendered a verdict. *See United States v. Gates,* 935 F.2d 187, 188 (11th Cir. 1991) (recognizing that "an interlocutory appeal or a motion to this court is the only means by which a defendant can seek review of" an order denying a § 3164(c) motion and that disallowing such appeals would defeat the purpose of the statute); *but see United States v. Stanford,* 418 F. App'x 276, 278-79 (5th Cir. 2011) (concluding that rulings on motions for pretrial release under § 3164(c) are not reviewable before final judgment under the collateral order rule). We thus conclude that we have jurisdiction to reach the merits of Dermen's claim.

**b. Analysis**

The Speedy Trial Act generally requires a defendant's trial to begin within 70 days of his indictment or first appearance before a judicial officer. 18 U.S.C. § 3161(c)(1). Section 3161(h) requires the exclusion of time for a variety of reasons, including delay from removal of a defendant from another district, pretrial motions, joinder with codefendants, and continuances required when the court finds that "the ends of justice ... outweigh the best interest of the public and the defendant in a speedy trial." A separate provision of the Act contains a 90-day clock for defendants who are in "continuous detention" pending trial and requires that trial occur within 90 days of the start of detention, excluding the periods of delay enumerated in § 3161(h). *Id.* § 3164(b).

With respect to the 90-day detention clock, § 3164(c) provides for automatic review and release from custody pending trial if the time limit is exceeded "through no fault of the accused or his counsel." The "no fault" language in § 3164(c) does not limit the available § 3161(h) exclusions. *Theron,* 782 F.2d at 1515-16. Thus, a defendant seeking release under § 3164(c) must show both that the 90-day clock has run and that the delay was "through no fault of the accused or his counsel." Dermen has not met either requirement.

**[3]** In concluding that Dermen's 90-day clock had not run, the trial court excluded the following time periods under § 3161(h):

- The time between August 24, 2018 and December 5, 2018, based on its finding that the case is complex, *see* § 3161(h)(7)(B)(ii), and because until early December, Dermen had "acquiesced in continuances of the trial date without objection." Aplt. App. Vol. IV at 1135, 1150.

- The time between December 5, 2018 and February 11, 2019, because he had "conced[ed] to the exclusion of time until December 5, 2018," thus waiving any statutory right to a trial **\*505** within 70 days of that date. *Id*. at 1152. [2]

- The time between February 11 and May 13, 2019, because the court continued the February trial date to accommodate a codefendant's attorney's six-week trial in New York in April. *See* § 3161(h)(6) (requiring the exclusion of "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted").

- The time between May 13 and July 29, 2019, because the court continued the May trial date both to give counsel for the two new codefendants adequate time to prepare for trial and to accommodate a continuance of the New York trial. The court noted that Dermen's own counsel also was involved in the New York case, having accepted a defendant in that case as a new client despite knowing that trial in the New York case would conflict with the May trial date in this case. [3] *See* § 3161(h)(7)(B)(ii), (iv) (listing providing adequate trial preparation time for all parties as a factor to be considered in deciding whether to grant an ends-of-justice continuance).

Dermen argues that the district court's exclusion of these time periods under § 3161(h)(6) does not meet this circuit's test for determining when it is reasonable to charge a defendant with trial delays caused by a codefendant. In *Vogl*, we explained that, when making that determination, courts should consider: "(1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." 374 F.3d at 984 (internal quotation marks omitted).

In applying that test here, the district court agreed with Dermen that the first factor favors him because he is not free on bond. When it granted the second continuance and denied

Dermen's first request for reconsideration of his release, the court found that the second factor—zealous pursuit of speedy trial—also weighed in his favor because, although he "acquiesced" to the first continuance, he objected to the second one. Aplt. App. Vol. III at 617. But in the order at issue here, the court found that the second factor is "largely neutral" because his pursuit of a speedy trial before then had been "inconsistent" and his objection to the third continuance on speedy trial grounds was "disingenuous" and "in name only" considering his own counsel's self-imposed conflict with the May trial date. *Id*. Vol. IV at 1139-40, 1142. And the court found in both orders that the third factor—the interest in trying multiple defendants in a single trial—"weigh[ed] heavily in favor" of continuing the trial and excluding the time from Dermen's speedy trial calculation. *Id*. Vol. III at 618; *id*. Vol. IV at 1140, 1142. In the order at issue here, the court emphasized the "strong presumption favoring trying [codefendants] together," *id*. Vol. IV at 1140 (citing **\*506** *United States v. Zar*, 790 F.3d 1036, 1043 (10th Cir. 2015)), and explained that a joint trial is "particularly important" in this case because it is "incredibly complex," the trial will likely last more than two months, and "[i]n order to put on its case against each of these defendants, the Government must call the same witnesses and put on the same evidence." *Id*. at 1138, 1140-41.

Dermen challenges several of the district court's factual findings, particularly with respect to the zealousness of his pursuit of a speedy trial. He also takes issue with the court's balancing of the *Vogl* factors, arguing that it should have weighed the first two factors more heavily than the third, Aplt. Mem. on Review of Detention at 11, which he claims is neutral because the government "thumbed its nose at the efficient use of prosecutorial and judicial resources" by initially indicting only three of the defendants and waiting until six months later to indict the other two so that it could have the additional time "to get its case together while Mr. Dermen sat in jail," *id*. at 13. But the district court rejected that argument. It found that the government did not intend to go to trial on the first indictment, which it filed under seal to preserve certain charges against statute of limitations defenses, and it arrested and detained the first three defendants only after one of them forced the government's hand by attempting to flee to Turkey. The court further found that the delay in filing the second indictment was the result of the detained defendants' efforts to hamper the government's investigation and prevent discovery of the evidence that supported the charges against the two new defendants.

We review a district court's findings in support of speedy trial exclusions for clear error, *Vogl,* 374 F.3d at 982, and Dermen has not shown that the district court clearly erred here. Accordingly, he has not demonstrated either that his 90-day speedy trial clock has run or that the trial delays were not attributable to him or his counsel—the two requirements for establishing his entitlement to automatic release under § 3164(c).

### 3. Due Process Violation

 **[4]**    We also reject Dermen's final contention that due process requires his release.

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Although pretrial detention for regulatory purposes "does not constitute punishment before trial in violation of the Due Process Clause," *United States v. Salerno,* 481 U.S. 739, 748, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Tenth Circuit has recognized that at some point, pretrial detention may become so protracted as to violate due process and require release. *See Theron,* 782 F.2d at 1516 (explaining that "valid pretrial detention assumes a punitive character" and therefore "may violate due process" "when it is prolonged significantly"); *see also United States v. Briggs,* 697 F.3d 98, 103 (2d Cir. 2012) (recognizing that lengthy detentions can implicate due process concerns, stating that "the Constitution imposes no bright-line limit on the length of pretrial detention," and expressing concern about a nearly 26-month detention).

Due process is necessarily a case-specific inquiry, as is the question whether "regulatory" pretrial detention has become "punitive." *Theron,* 782 F.2d at 1516. The relevant factors to consider in determining whether the length of pretrial detention has exceeded constitutional limits are (1) the length of detention; (2) the extent of the prosecution's responsibility for the delay of trial; and (3) the strength of the **\*507** evidence upon which the detention is based. *See Briggs,* 697 F.3d at 101 (adopted in *United States v. Cos,* 198 F. App'x 727, 732 (10th Cir. 2006) (unpublished)). "The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's continuance." *Briggs,* 697 F.3d at 101.

Examining the relevant factors here, the district court found that by the time the July 29 trial starts, Dermen will have been detained for about 11 months. The court acknowledged that "this is a significant period of detention," Aplt. App. Vol. IV at 1147, but concluded that it is not excessive under the circumstances, and is significantly less than the 34-month and 14-month detentions this court upheld in *United States v. Peters,* 28 F.3d 114 (10th Cir. 1994) (unpublished table decision), and *United States v. Hudak,* 77 F. App'x 489 (10th Cir. 2003) (unpublished), and the 31-month detention the Second Circuit upheld in *United States v. Millan,* 4 F.3d 1038, 1044, 1049 (2d Cir. 1993). As to the second factor, the court found that the defense was responsible for most of the trial delays, rejecting Dermen's argument that the government caused them by arresting him prematurely and filing superseding indictments adding new charges and defendants. Consistent with its findings with respect to the *Vogl* factors, the court again found that the government was not responsible either for the timing of Dermen's arrest or for the delay in returning the superseding indictments. *See Theron,* 782 F.2d at 1516 (explaining that "[d]elays ... that the defendant caused would not raise a [due process] problem"). [4] Finally, the court found that the evidence supporting Dermen's continued detention as a flight risk is "compelling." Aplt. App. Vol. IV at 1149. We find no clear error in the district court's findings of historical fact, and we agree with its conclusion that the length of Dermen's detention was not constitutionally excessive under the circumstances.

### III. CONCLUSION

The district court's decision is affirmed.

**All Citations**

779 Fed.Appx. 497

---

**Footnotes**

\*        After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1        Where a court "has granted a continuance after weighing established facts proper to its consideration," this court reviews for abuse of discretion. *United States v. Theron*, 782 F.2d 1510, 1513 n.1 (10th Cir. 1986). Here, however, Dermen's appeal seeks review of the district court's detention determination, not its decisions to continue the trial date.

2        The court made this finding in the context of addressing whether the time it excluded from the 70-day speedy trial calculation under § 3161(h)(6) should also be excluded from the 90-day calculation under § 3164.

3        Although Dermen had not asked for a continuance based on the conflict, the court noted that his counsel's actions "insure that [Dermen] will require a continuance of the existing trial date to maintain continuity of counsel." Aplt. App. Vol. IV at 1140.

4        Dermen relies heavily on *Theron*, in which this court recognized that "the coincidence of a complex case *and* multiple defendants, without more," does not outweigh a particular defendant's interest in a prompt trial, 782 F.2d at 1513, and ordered that Theron, who had been detained for four months, be released on due process grounds, *id.* at 1516. But *Theron* is readily distinguishable because, unlike Dermen, Theron had taken "no steps to delay trial," consistently asserted his speedy trial rights, and was ready to proceed to trial when the court continued the trial date. *Id.* The other Tenth Circuit cases Dermen relies on to support his due process argument are similarly inapposite.

---

**End of Document**                                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.