**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | |
| **v.** | **Case No.  CR-25-226-JFH** |
| **JAMES SAMUEL EATON,** | |
| *Defendant.* | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT**

CHRISTOPHER J. WILSON
United States Attorney

s/    *T. Cameron McEwen*
T. CAMERON MCEWEN
AL BAR # 7161-R67M
Assistant United States Attorney
520 South Denison
Muskogee, OK 74401
Telephone: (918) 684-5100
Fax: (918) 684-5150
Cameron.McEwen@usdoj.gov
*Attorney for Plaintiff*

March 31, 2026

i

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................................iii-iv

    **I.**      **RELEVANT PROCEDURAL HISTORY**...............................................................1

    **II.**     **ARGUMENT AND AUTHORITIES** .......................................................5

        **A.**   **The Defendant is on notice of each element the United States must prove to meet its burden as to Counts One and Two of the Indictment** ..................................................................................................... 6

            1.  Elements and Relevant Law for 18 U.S.C. § 373(a) …………………………….. 6

            2.  Elements and Relevant Law for 18 U.S.C. § 875(c) ……………..................... 11

        **B.**   **The Defendant is put on fair notice of the charges against which he must defend** .................................................................................................... 13

            1.  The First Amendment does not bar prosecution of threatening communications similar to those made by the Defendant .................................................................................................... 13

            2.  Counts One and Two of the Indictment sufficiently put the Defendant on notice of what particular individual or group of individuals is the victim ……………………………………………………………… 15

        **C.**   **The Defendant is able to assert a double jeopardy defense** …........................... 18

    **III.**    **CONCLUSION** ……………………………………………………………… 18

Certificate of Service ...................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Hamling v. United States*, 418 U.S. 87 (1974)....................................................................... 6

*In re Amawi*, 780 Fed.Appx. 301 (6th Cir. 2019)........................................................... 8, 9

*McLean v. Bondi*, 160 F.4th 144 (5th Cir. 2025)................................................................... 9

*Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155 (10th Cir. 2009)........................................ 12

*United States v. Bonner*, 85 F.3d 522 (11th Cir. 1996) .................................................... 10

*United States v. Bundy*, 2016 WL 8730142 (D. Nev. December 20, 2016) ................................ 10

*United States v. Carll*, 105 U.S. 611 (1882) ................................................................ 6

*United States v. Crawford*, 2022 WL 17069409 (11th Cir. 2022)..................................................... 9

*United States v. Dashney*, 117 F.3d 1197 (10th Cir. 1997) .................................................... 5

*United States v. Dillard*, 795 F.3d 1191 (10th Cir. 2015) ....................................................... 12, 14

*United States v. Elonis*, 575 U.S. 723 (2015) ............................................................... 12

*United States v. Gabriel*, 810 F.2d 627  (7th Cir. 1987)................................................................ 7

*United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994) .................................................................. 5

*United States v. Heineman*, 767 F.3d 970 (10th Cir. 2014)........................................................ 12

*United States v. Kay*, 359 F.3d 738 (5th Cir. 2004)......................................................... 6

*United States v. Khan*, 937 F.3d 1042 (7th Cir. 2019)................................................................ 16

*United States v. Ladwig*, 432 F.3d 1001 (9th Cir. 2005) .............................................................. 10

*United States v. McNeil*, 228 F.Supp.3d 809 (N.D. Ohio January 11, 2017) ................................. 7

*United States v. Mejia*, 2022 WL 13801066 (E.D. Penn. October 21, 2022)................................. 9

*United States v. Mobley*, 971 F.3d 1187 (10th Cir. 2020) ............................................................. 12

*United States v. Nelson*, 2023 WL 122504 (Dist. N.M. January 6, 2023).................................... 8

*United States v. Powell*, 767 F.3d 1026  (10th Cir. 2014) ........................................................ 6

*United States v. Redcorn*, 528 F.3d 727 (10th Cir. 2008)............................................................ 6

*United States v. Sampson*, 371 U.S. 75 (1962) .......................................................................... 5

*United States v. Stevens*, 2016 WL 7442657 (N.D. Okla. December 27, 2016) .......................... 14

*United States v. Stevens*, 881 F.3d 1249 (10 Cir. 2018) ............................................................. 13

*United States v. Stock*, 728 F.3d 287  (3d Cir. 2013)................................................................. 13

*United States v. Sweet*, 107 F.4th 944  (10th Cir. 2024)............................................................. 6

*United States v. Todd*, 446 F.3d 1062  (10th Cir. 2006) ............................................................ 5

*United States v. Viefhaus*, 168 F.3d 392 (10th Cir. 1999) ..................................................... 12, 14

*United States v. Ward*, 748 F.Supp.3d (E.D.N.Y. September 9, 2024) ....................................... 10

*United States v. Watts*, 394 U.S. 705 (1969) ............................................................................ 11

*United States v. Wheeler*, 776 F.3d 736 (10th Cir. 2015)....................................................... 12, 13

*United States v. White*, 610 F.3d 956  (7th Cir. 2010)............................................................. 6, 7

*Virginia v. Black*, 538 U.S. 343, 359–60 (2003)..................................................................... 11,13

**Statutes**

18 U.S.C. § 115(a) .................................................................................................................. 10

18 U.S.C. § 115(a)(1)........................................................................................................ 2, 8, 10

18 U.S.C. § 115(a)(1)(B). ...................................................................................................... 9, 10

18 U.S.C. § 373(a) ................................................................................................................ 1, 6

18 U.S.C. § 875(c) ....................................................................................................... 1, 2, 11, 12

18 U.S.C. § 1111.................................................................................................................... 8

18 U.S.C. § 1113.................................................................................................................... 8

18 U.S.C. § 1114.............................................................................................................. 2, 8, 9

18 U.S.C. § 1114(a)(3) ................................................................................................. 8, 9

**Rules**

Federal Rules of Criminal Procedure Rule 7(c)(1) ............................................................ 5

**Other Authorities**

10th Circuit Pattern Jury Instruction 2.37.1 (2025) ....................................................... 11

S. Rep. No. 307, 97th Cong., 1st Sess. 183 (1982) ......................................................... 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | |
| **v.** | **Case No.  CR-25-226-JFH** |
| **JAMES SAMUEL EATON,** | |
| *Defendant.* | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT**

Comes now the United States of America, by and through United States Attorney Christopher J. Wilson and Assistant United States Attorney T. Cameron McEwen for the Eastern District of Oklahoma, and respectfully requests the Court deny the Defendant's Motion to Dismiss Indictment (Doc. 44).

**I.      RELEVANT PROCEDURAL HISTORY**

On November 13, 2025, the Defendant was indicted by a federal grand jury in the Eastern District of Oklahoma for Solicitation to Commit a Crime of Violence, in violation of 18 U.S.C. § 373(a), and Interstate Communications with a Threat to Injure the Person of Another, in violation of 18 U.S.C. § 875(c).  *See* Doc. 2.  Counts One and Two of the Indictment read:

**COUNT ONE**

**SOLICITATION TO COMMIT A CRIME OF VIOLENCE**
[18 U.S.C. § 373(a)]

Beginning on or about April 15, 2025, and continuing until on or about July 18, 2025, in the Eastern District of Oklahoma, the defendant, JAMES SAMUEL EATON, with the intent that another person engage in conduct constituting a felony

1

that has as an element the use, attempted use, and threatened use of physical force against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, did solicit, command, induce, and endeavor to persuade such other person to engage in such conduct, that is the killing of a Federal officer, in violation of 18 U.S.C. § 1114, and influencing, impeding, and retaliating against a Federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1), which is in violation of Title 18, United States Code, Section 373(a).

## COUNT TWO

### INTERSTATE COMMUNICATIONS WITH A
### THREAT TO INJURE THE PERSON OF ANOTHER
[18 U.S.C. § 875(c)]

Beginning on or about April 15, 2025, and continuing until on or about July 18, 2025, in the Eastern District of Oklahoma, the defendant, JAMES SAMUEL EATON, did knowingly and willfully transmit in interstate commerce a communication which contained a threat to injure the person of another, specifically a threat to murder and assault a Federal law enforcement officer with the U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement, in violation of Title 18, United States Code, Section 875(c).

*Id.*

On November 25, 2025, the United States filed a Motion for Detention (Doc. 9). On that same day, the Defendant was arraigned on his Indictment. *See* Doc. 10. At the arraignment, the Defendant requested a detention hearing, which was held on November 26, 2025. *See* Docs. 10, 16, and 19. At the detention hearing before United States Magistrate Judge D. Edward Snow,

2

Special Agent Rebecca Gionta with Homeland Security Investigations testified on behalf of the United States. *See* Detention Hearing Transcript, pgs. 6-64. During her testimony, sixteen (16) exhibits were offered into evidence by the United States, including a Forensic Examination Report of the Defendant's X account, which detailed all the threatening communications made by the Defendant that form the basis of the Indictment. *See* Detention Hearing, Government's Exhibit 3.

Specifically, Special Agent Gionta testified to the following threatening communications made by the Defendant that were identified as "deleted tweets":

1.  On July 18, 2025, the Defendant posted, "amnesty plan where all illegal immigrants get to stay, and if you kill an ICE agent (legal under my plan) i buy you a beer";

2.  On July 11, 2025, the Defendant posted, "@PsyopDsrspctr correct. immigration restrictions are tyrannical. ICE/border patrol and police are tyrants. anyone that tries to arrest and deport an "illegal" immigrant should be shot";

3.  On July 11, 2025, the Defendant posted, "follow me for thinly-veiled threats toward law enforcement";

4.  On July 9, 2025, the Defendant posted, "@frmda614 deadass i made this months ago (except it originally said "dead ICE agents") and was just waiting on an opportunity to use it lol";

5.  On July 8, 2025, the Defendant posted, "death to ICE. free them all. https://t.co/ZDy4LgBZhL";

6.  On July 3, 2025, the Defendant posted, "to be clear, every immigrant detention center is a concentration camp. every deportation is kidnapping/human trafficking. every ICE agent is a terrorist.death to ICE. free every ICE hostage. burn the detention centers. abolish borders.";

7.  On June 8, 2025, the Defendant posted, "death to all who stand in the way of free movement, including people that snitch to the feds https://t.co/QNAn9v58Os";

8.  On June 8, 2025, the Defendant posted, "told some DHS pig to die and got my account locked for 12 hours (so much for free speech, elon) so anyway kill ICE/DHS https://t.co/mn8rFGnmcJ";

9.  On June 7, 2025, the Defendant posted, "the real invaders are the fascist ICE agents that are kidnapping immigrants, and the citizens are in the street fighting them https://t.co/ovJbZPb0Rf https://t.co/qIvOmiUDvA"; and

3

10.    On April 15, 2025, the Defendant posted, "the only good ICE agent is a dead ICE agent[.]"

*See* Detention Hearing Transcript, pg. 22, line 1 to pg. 28, line 21; Detention Hearing, Government's Exhibit 3, pgs. 37-43.

Special Agent Gionta also testified to the following threatening communications that were identified as "tweets" and still viewable on the Defendant's X account:

1.    On July 11, 2025, the Defendant posted, "@electriccowboyy everyone has the right to defend themselves from cops, no matter where they were born";

2.    On July 11, 2025, the Defendant posted, "@Bobby_Shmuda_ yes. police are tyrants. shooting them is self defense.and fuck democrats lol, we don't fw them over here either";

3.    On July 11, 2025, the Defendant posted, "@RaxRazing nothing you say will make me think cops are okay they can find real jobs and make an income fairly or get shot";

4.    On July 11, 2025, the Defendant posted, "@DGililly don't tread on me is shooting cops";

5.    On June 19, 2025, the Defendant posted, "a 500% increase in assaults on ICE is terrible. we gotta get those numbers WAY up https://t.co/bhDNM5cXha";

6.    On June 15, 2025, the Defendant posted, "sanctuary cities should make it legal to shoot ICE agents on sight https://t.co/gRIAUm6AQE";

7.    On June 9, 2025, the Defendant posted, "@JoeGabardina @ProjectRadLib i believe so. ICE is kidnapping people off the street en masse. violently resisting them is self defense";

8.    On June 4, 2025, the Defendant posted, "the 2nd amendment is for shooting ICE agents that try to kidnap your neighbors https://t.co/KqnsrciuLf";

9.    On June 3, 2025, the Defendant posted, "ICE officers 'doing their job' should get shot in the head attacking law enforcement is good and heroic people should threaten and assault ICE officers more https://t.co/3L3ohq0eom";

10.    On May 30, 2025, the Defendant posted, "ICE are the Nazis 100% of ICE officers should be assaulted https://t.co/RlAAZZjXg4";

11.    On May 20, 2025, the Defendant posted, "ICE are the Nazis the attacks, both rhetorical, and physical, on ICE officers, will continue until there are no ICE officers left ICE, and all who stand in the way of freedom of movement for all people, will be destroyed https://t.co/lbHhSfi3om."; and

12.    On April 15, 2025, the Defendant posted, "@JackHates1Amend anyone who tries to deport an 'illegal' immigrant should be shot[.]"

*See* Detention Hearing Transcript, pg. 28, line 22 to pg. 32, line 17; Detention Hearing, Government's Exhibit 3, pgs. 43-47.

In addition to these statements, the United States highlighted some attachments that went along with some of the "deleted tweets" and "tweets". The timeline of the "deleted tweets" and "tweets" admitted into evidence at the detention hearing was from April 15, 2025 to July 18, 2025.

## II.    ARGUMENT AND AUTHORITIES

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)). The appropriate inquiry on a motion to dismiss an indictment is not whether the government has presented sufficient evidence to support the charge, but rather whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense. *Id*. (citing *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) and *United States v. Sampson*, 371 U.S. 75, 78–79 (1962)).[1]

Rule 7(c)(1) of the Federal Rules of Criminal Procedure states, "[i]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "It is generally sufficient that an indictment set forth the offense

---

[1] This is Court's standard of review for motions to dismiss the indictment. *See United States v. Hutchins, et al*, CR-24-011-JFH, Doc. 52 at pg. 2.

in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). "Therefore, where the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Powell*, 767 F.3d 1026, 1030 (10th Cir. 2014) (quoting *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008)). "Most [circuits courts] that have addressed [the issue of factual sufficiency] appear to approve the practice of tracking the statute as long as the words used expressly set out all of the elements necessary to constitute the offense." *United States v. Kay*, 359 F.3d 738, 756 (5th Cir. 2004) (collecting cases). "The cases in which an indictment that parrots the statute is held to be insufficient turn on a determination that the factual information that is not alleged in the indictment goes to the very *core of criminality* under the statute." *Id*. at 756–57. This analysis forms the basis of the Tenth Circuit's decision in *Sweet*, which is the Circuit's current position on the sufficiency of an indictment. *See United States v. Sweet*, 107 F.4th 944, 956-59 (10th Cir. 2024).

**A.  The Defendant is on notice of each element the United States must prove to meet its burden as to Counts One and Two of the Indictment.**

*1.  Elements and Relevant Law for 18 U.S.C. § 373(a)*

There is no Tenth Circuit Pattern Jury Instruction for the charge of 18 U.S.C. § 373(a), However, the Seventh Circuit has held that in a solicitation prosecution under 18 U.S.C. § 373(a), "the government must establish (1) with strongly corroborative circumstances that a defendant intended for another person to commit a violent federal crime, and (2) that a defendant solicited or otherwise endeavored to persuade the other person to carry out the crime." *United States v. White*,

6

610 F.3d 956, 959 (7th Cir. 2010) (citations omitted).

Section 373(a) states, "[w]hoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; or if the crime solicited is punishable by life imprisonment or death, shall be imprisoned for not more than twenty years."  Count One of the Indictment in this case tracks the language of the statute and addresses each element of the charge.

Examples of "strongly corroborative" circumstances of intent include "evidence showing [a] defendant:  (1) offered or promised payment or some other benefit to the person solicited; (2) threatened to punish or harm the solicitee for failing to commit the offense; (3) repeatedly solicited the commission of the offense or expressly stated his seriousness; (4) knew or believed that the person solicited had previously committed a similar offense; or (5) acquired weapons, tools or information, or made other preparations, suited for use by the solicitee."  *United States v. White*, 698 F.3d 1005, 1015 (7th Cir. 2012) (citing *United States v. Gabriel*, 810 F.2d 627, 635 (7th Cir. 1987); S. Rep. No. 307, 97th Cong., 1st Sess. 183 (1982)).

Although these examples of "strongly corroborative" circumstances of intent are not specifically named in Count One of the Indictment, there is no such requirement; nor is the United States required to reference in the indictment which specific circumstance it intends to pursue for prosecution.  *See, e.g., United States v. McNeil*, 228 F.Supp.3d 809, 816 (N.D. Ohio January 11,

7

2017) (defendant's Motion to Dismiss Indictment denied on all grounds, including those counts for violation of § 373(a), which tracked the statute, did not name a specific strongly corroborative circumstance, and contained language almost identical to Count One of the Indictment in the Defendant's case). These are nothing more than examples and arguably not an exhaustive list. The proper manner for the Court to address the question of what is an example of a "strongly corroborative" circumstance of intent would be via a jury instruction at the conclusion of the trial.

Furthermore, in Count One, the two underlying crimes of violence specifically named in the Indictment are the killing of a Federal officer in violation of 18 U.S.C. § 1114, and influencing, impeding, and retaliating against a Federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1).

Under Section 1114(a), "[w]hoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished – (1) in the case of murder, as provided under section 1111; (2) in the case of manslaughter, as provided under section 1112; or (3) in the case of attempted murder or manslaughter, as provided in section 1113." 18 U.S.C. § 1114(a).

Subsections (1) and (3) of Section 1114(a), specifically referencing murder (18 U.S.C. § 1111) and attempted murder (18 U.S.C. § 1113), are crimes of violence. *See, e.g., United States v. Sandoval-Flores*, 2026 WL 628388 (10th Cir. 2026) (held that 18 U.S.C. § 1114(a)(3), as it relates to attempted murder, is a crime of violence); *In re Amawi*, 780 Fed.Appx. 301 (6th Cir. 2019) (18 U.S.C. § 1114, as it relates to murder, is a crime of violence); *United States v. Nelson*,

2023 WL 122504 (Dist. N.M. January 6, 2023) (Motion to Dismiss Count Two of the Indictment denied because 18 U.S.C. § 1114(a)(3), as it relates to attempted murder, is a crime of violence); and *United States v. Mejia*, 2022 WL 13801066 (E.D. Penn. October 21, 2022) (18 U.S.C. § 1114, as it relates to murder, is a crime of violence).

Additionally, in *In re Amawi*, the Sixth Circuit found that under the categorical approach, § 1114 is divisible because it names distinct crimes, some of which are crimes of violence and some of which are not. *See* 780 Fed.Appx. at 303-04. Under this categorical approach, "step two asks whether there are distinct crimes under the same statute: one that would qualify as a crime of violence . . . and another that would not. And step three attempts to figure out which alternative crime the defendant was charged with and convicted." *Id*. at 304. The Sixth Circuit held that under this categorical approach, Section 1114 is a crime of violence when the facts support first-degree murder, which is what the facts would support in this case. *Id*.

Next, under § 115(a)(1), "[w]hoever … threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b)." 18 U.S.C. § 115(a)(1)(B).

As to threats to murder and assault a Federal law enforcement officer referenced in Section 115(a)(1)(B), these are crimes of violence. *See, e.g., McLean v. Bondi*, 160 F.4th 144 (5th Cir. 2025) (threatening to assault a Federal official, in violation of 18 U.S.C. § 115(a)(1)(B), is a crime of violence, requires intent, and cannot be committed recklessly); *United States v. Crawford*, 2022

WL 17069409 (11th Cir. 2022) (telephone calls threatening to kill a federal probation officer, an agent of the FBI, and an assistant United States attorney in violation of 18 U.S.C. § 115(a) are crimes of violence); *United States v. Ladwig*, 432 F.3d 1001 (9th Cir. 2005) (making a harassing or threatening phone call wherein the defendant threatens the use of force, as described in 18 U.S.C. § 115(a)(1), is a "violent felony" for ACCA purposes); *United States v. Bonner*, 85 F.3d 522 (11th Cir. 1996) (telephone calls threatening to assault and murder an assistant United States attorney in retaliation for her previous prosecution of the defendant, in violation of 18 U.S.C. § 115(a)(1)(B), are crimes of violence); *United States v. Bundy*, 2016 WL 8730142, *20-21 (D. Nev. December 20, 2016) (Motion to Dismiss on Count Eight, Threatening a Federal Law Enforcement Officer, in violation of  18 U.S.C. § 115(a)(1)(B), denied because "it may serve as a predicate crime of violence for a § 924(c) offense because a true threat involves the threatened use of physical force"); and *United States v. Ward*, 748 F.Supp.3d (E.D.N.Y. September 9, 2024) (threatening to assault and murder a federal judge, in violation of 18 U.S.C. § 115(a)(1)(B), "constitutes a 'crime of violence' within the meaning of the Bail Reform Act").

Based on the plain reading of Counts One and Two of the Indictment, it is clear the underlying threats and solicitations communicated by the Defendant were to murder and/or assault the victim in this case.  Furthermore, the facts that the United States would admit at trial would support threatening communications and solicitations involving first degree murder and assault with intent to commit murder.  Thus, both Sections 1114 and 115(a)(1) are crimes of violence for the purposes of § 373(a).

Moreover, Count One of the Indictment explicitly addresses each element of Section 373(a) and properly tracks the language of the statute.  It puts the Defendant on notice of all factual information that "goes to the very *core of the criminality* under the statute."  *See Kay*, 359 F.3d

10

756-57. This information includes the date, place, and nature of the illegal activity, as well as identifies the victim. It also satisfies the Tenth Circuit's requirements set forth in *Sweet*. Therefore, as to Count One, the Defendant's motion should be denied.

*2. Elements and Relevant Law for 18 U.S.C. § 875(c)*

According to the Tenth Circuit's Pattern Jury Instructions, in order for the United States to meet its burden as to Count Two, Interstate Communications with a Threat to Injure the Person of Another, in violation of 18 U.S.C. § 875(c), it must establish the following:

1. The defendant knowingly transmitted a communication containing a threat to injure the person of another;

2. The defendant transmitted the communication with the intent to make a threat, or with knowledge that the communication will be viewed as a threat; and

3. The communication was transmitted in interstate commerce.

*See* 10th Circuit Pattern Jury Instruction 2.37.1 (2025).

Furthermore, the Tenth Circuit's Pattern Jury Instruction for Section 875(c) states, "[a] 'threat' is a serious statement expressing intent to instill fear, which, under the circumstances, would cause apprehension in a reasonable person, as distinguished from mere political argument, idle talk, exaggeration, or something said in a joking manner. It is not necessary that the defendant intended to carry out the threat, nor is it necessary that the defendant had the ability to carry out the threat." *Id*.

In the "Use Note" section of the Tenth Circuit's Pattern Jury Instruction for Section 875(c), it further clarifies that "[t]he definition of 'threat' comports with case law defining a 'true threat,' which is not protected expression under the First Amendment. The word 'true' is omitted to avoid jury confusion. *See Virginia v. Black*, 538 U.S. 343, 359–60 (2003); *United States v. Watts*, 394

11

U.S. 705, 707 (1969)).  Whether a statement is a 'true threat' is a jury question.  *See, e.g., United States v. Dillard*, 795 F.3d 1191, 1201, 1207 (10th Cir. 2015); *United States v. Wheeler*, 776 F.3d 736, 742–43 (10th Cir. 2015); *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1167–68 (10th Cir. 2009); *United States v. Viefhaus*, 168 F.3d 392, 395–96 (10th Cir. 1999)). . . .  The second element [of the Tenth Circuit Pattern Jury Instruction] is taken from *United States v. Elonis*, 575 U.S. 723, 135 S. Ct. 2001, 2012 (2015), where the Court interpreted 18 U.S.C. § 875(c) to require such intent.  In *United States v. Heineman*, 767 F.3d 970 (10th Cir. 2014), the court held that the First Amendment required the government to show that a defendant intended to instill fear.  *See id.* at 982."

Additionally, Section 875(c) states, "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."

In *Mobley*, the Tenth Circuit affirmed the district court's denial of a motion to dismiss the indictment that tracked the statutory language of Section 875(b) without more specificity to include "the location from which she sent the alleged threats, the location at which the alleged threats were received, the means of sending the alleged threats, the language of the alleged threats, the name of the retained child, the location at which she retained the child, the person to whom she sent the threats, the person whose rights she intended to obstruct, and the basis of that person's acquiring parental rights."  *United States v. Mobley*, 971 F.3d 1187, 1195-97 (10th Cir. 2020).  The Tenth Circuit held, "[o]ur precedent is clear that the indictment is sufficient without such factual proof."  *Id.* at 1197 (citing *Redcorn*, 528 F.3d at 733).

Similarly here, Count Two of the Indictment addresses each element of § 875(c) and properly tracks the language of the statute. It puts the Defendant on notice of all factual information

that "goes to the very core of the criminality under the statute." *See Kay*, 359 F.3d 756-57. This information includes the date, place, and nature of the illegal activity, as well as identifies the victim. It likewise satisfies the Tenth Circuit's requirements set forth in *Sweet*. Therefore, as to Count Two, the Defendant's motion should be denied.

**B. The Defendant is put on fair notice of the charges against which he must defend.**

*1. The First Amendment does not bar prosecution of threatening communications similar to those made by the Defendant.*

In *Stevens*, the defendant sent several threatening communications, in violation of Section 875(c), to law enforcement at the height of a heated debate in this country over law enforcement's use of force against minorities. *See United States v. Stevens*, 881 F.3d 1249, 1251-52 (10 Cir. 2018). The defendant filed a motion to dismiss the indictment based on the First Amendment and argued his statements were not true threats. *See id*. at 1152.

The Tenth Circuit reasoned that "[w]hether a reasonable jury could find [the defendant's] statements to be true threats is a question of law." *Id*. "[I]f there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law." *Id*. (quoting *United States v. Wheeler*, 776 F.3d 736, 742 (10th Cir. 2015). "But, 'absent an unusual set of facts, the question whether statements amount to true threats is a question generally best left to a jury.'" *Id*. "If the court determines a 'reasonable jury could find that the [ ] communication[s] constitute[ ] ... true threat[s],' then it may deny the defendant's motion to dismiss." *Stevens*, 881 F.3d at 1252 (quoting *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013)).

"In § 875(c) prosecutions, [the Tenth Circuit has] followed the Supreme Court's definition of a threat as 'a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" *Stevens*, 881 F.3d at 1253 (quoting *Wheeler*, 776 F.3d at 743; *Virginia v. Black*, 538 U.S. 343, 359 (2003)). "In line with the First Amendment, § 875(c)'s threat

13

element requires proof that a reasonable person would understand the communication to be a threat." *Stevens*, 881 F.3d at 1253 (citing *Wheeler*, 776 F.3d at 743). "Under the reasonable person standard, '[t]he question is whether those who hear or read the threat reasonably consider that an actual threat has been made.'" *Stevens*, 881 F.3d at 1253 (quoting *United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015) (citation omitted). "A defendant cannot escape potential liability simply by using the passive voice or couching a threat in terms of 'someone' committing an act of violence, so long as a reasonable recipient could conclude, based on the language of the communication and the context in which it is delivered, that this was in fact a veiled threat of violence by the defendant or by someone acting under [the defendant's] direction or in conspiracy with [the defendant]." *Dillard*, 795 F.3d at 1201. In *Stevens*, the defendant sent several repeated messages of "specific acts of violence directed toward particular individuals or groups of individuals[,]" including members of law enforcement. *Stevens*, 881 F.3d at 1254.

Ultimately, the Tenth Circuit disagreed with the defendant and held a "reasonable jury could find from their language and context that [the defendant's statements] were true threats." *Id*. at 1255. Also, "even if 'a specific threat accompanies pure political speech[, this] does not shield a defendant from culpability.'" *Id*. at 1256 (quoting *United States v. Viefhaus*, 168 F.3d 392, 396 (10 Cir. 1999)). Furthermore, the Tenth Circuit agreed with the district court and found that "even if [the defendant's] messages concerned 'an event that garnered national attention and [was] a part of a larger political debate,' this did 'not preclude the communications from being true threats.'" *Stevens*, 881 F.3d at 1256 (quoting *United States v. Stevens*, 2016 WL 7442657 *1, 2 (N.D. Okla. December 27, 2016)).

Here, the Defendant claims he cannot properly assert a First Amendment defense without more specificity as to the statements the United States intends to use against him in its prosecution.

14

The Defendant's claim is without merit. The Defendant knows exactly what statements are at issue in the Indictment. Not only has the United States properly laid out the time period for these statements in Counts One and Two of the Indictment, "[b]eginning on or about April 15, 2025, and continuing until on or about July 18, 2025," as well as identified the place, the nature of the illegal activity, and the victim, it also timely provided the Defendant discovery in this case that identifies which statements it intends to use in its prosecution. Specifically, these twenty-two (22) statements along with their attachments were highlighted at the Defendant's detention hearing on November 26, 2025, and are detailed in the Forensic Examination Report of the Defendant's X account.

The Defendant has been properly put on notice of all statements, communications, and solicitations made by him that the United States intends to use in its prosecution. When applying these statements, communications, and solicitations to the *Stevens* analysis, a reasonable jury could find from their language and context that they are true threats. Therefore, the Defendant's motion should be denied.

> 2. *Counts One and Two of the Indictment sufficiently put the Defendant on notice of what particular individual or group of individuals is the victim.*

In Counts One and Two of the Indictment, the victim is referred to as "a Federal officer," "a Federal law enforcement officer," and "a Federal law enforcement officer with the U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement." It is clear from the Indictment that the victim is a Federal law enforcement officer employed by the U.S. Department of Homeland Security or U.S. Immigration and Customs Enforcement. Furthermore, the relevant statements provided to the Defendant in discovery support the victim(s) named in Counts One and Two of the Indictment.

In *Khan*, the Seventh Circuit held that the following jury instruction "accurately and

15

thoroughly summarized the law":

> A true threat is a serious expression of intent to commit unlawful physical violence against another person or a group of people. The communication must be one that a reasonable observer, considering the context and circumstances of the statement, including surrounding communications, would interpret as a true threat. The government does not have to prove that the defendant actually intended to carry out the threat, or even that the defendant had the capacity to do so. A threat does not need to be communicated directly to its intended victim, or specify a particular victim,[2] or specify when it will be carried out. A communication is not a true threat if it is merely idle or careless talk, exaggeration, or something said in a joking manner.

*United States v. Khan*, 937 F.3d 1042, 1051 (7th Cir. 2019). In *Khan*, the defendant generally "called his potential victims "targets," which included college students, people walking their dogs, truckers, and anyone else who happened to be in the wrong place ([the defendant's] defined "free kill zone") at the wrong time (before his June 8, 2015 flight to Pakistan)." *Id*. at 1055. The Seventh Circuit held, "[t]he recipients of [the defendant's] threats [were] quite clear." *Id*. Similarly here, the Defendant's victim is quite clear. It is a Federal law enforcement officer employed by the U.S. Department of Homeland Security or U.S. Immigration and Customs Enforcement. There is no requirement the victim be a single, specific identifiable individual.

*Khan's* holding is supported by *Stevens* and *Wheeler*. In *Stevens*, the defendant made the following threatening communications:

1. The psychotic pile of s- - - who MURDERED the unarmed civilian who broke down is going to be executed, as are ALL psychotic s- - -bags you and other PDs hire across this Nation who murder unarmed civilians. They are all going to be killed.;

2. The psycho c- - - who never should have been given a badge, as well as all her cohorts who patted her on the back and said "Good Shoot" are going to be executed unless you put them behind bars on MURDER charges. Additionally,

---

[2] On March 9, 2026, the United States District Court for the Middle District of Florida, Tampa Division issued an order on a Rule 29 motion citing *Khan* and holding that "[§] 875(c) does not limit threats to only a single, identifiable person." *United States v. Desiree Doreen Segari*, Case No. 25-cr-456-KKM-AAS, Doc. 84 at pgs. 15-20.

unless the Prosecuter [sic] & the Judge deny bail, they too will be executed. America is NOT a Police State in which any mental defective owning a badge can murder at will. It's time for America to make a stand and it will. Do the right thing or die. There are no other choices.;

3. The Tulsa PD had a documented history of planting drugs on travelers. This is something you already know. Way before this incident, a long list of corrupt s- - - in Tulsa who routinely victimize [sic] innocent people had already been complied [sic]. Now is the time that EVERYONE on that list is going to start being killed. Cops, Prosecutors, Judges, family members. Citizens are going to end it, along with your lives. As you know, whoever comes forward first gets immunity. In this case though, those who do not will not be prosecuted ........ they will be killed.;

4. The basic right to Life, Liberty & the Pursuit of Happiness for Citizens is greater than the ego of psychotic, racist s- - - who were mistakenly given a badge & a gun. If killing every last one of you and your families ....... your wives .... your children is what it takes to drive that point home, so be it. You ARE NOT GODS.;

5. Ron Palmer, who has developed a culture of corruption and victimizing innocent civilians, along with his family is going to be burned to death. Yeah, he'll be guarded for a while, and then thinking there wasn't any real threat, when you scum least expect it .... he will be dead, along with his entire blood line. Then each of you who didn't speak up. Tell me, when you & your families are bleeding or burning to death, will you still believe it was worth it to f- - - Americans?;

6. Is the filling of the pockets of corrupt, psychotic cops worth more than your freedom? Is it worth more than the lives of your children? It started out with just under 100 Enforcers going to Tulsa. It has grown to well over 1000. Cops are going to be killed. Anyone who covers up corruption is going to be killed.;

7. Spill your guts to the Feds, even to questions they don't ask, or your kids will start dying. This ends now.;

8. The last words your child will hear are the same words that will be burned into his or her corpse: "Your parent decided a $100 kickback for f- - -ing an innocent civilian was worth more than you".; and

9. You think this gets you off the hook? It was a MURDER, not manslaughter. It was a [sic] execution. Betty is not going to get 3 yeas [sic] probation and a pension, she is getting a bullet through her brain. America needs to, and is finally going to make an example ........ and it won't stop with her. Every corrupt s- - - a- -hole cop who filed a report stating that Crutcher was reaching through his window is also going to be killed.

17

*Stevens, 881 F. 3d at 1256-57.* In *Wheeler*, the defendant made the following threating communications:

1. Urged "religious followers" to "kill cops. drown them in the blood of thier [sic] children, hunt them down and kill their entire bloodlines" and provided names.;\

2. "to my religious followers and religious operatives. if my dui charges are not dropped, commit a massacre in the stepping stones preschool and day care, just walk in and kill everybody."; and

3. "in my faith revenge is the only commandment."

*Wheeler*, 776 F.3d at 738.

In *Stevens* and *Wheeler*, the victims were not single, specific, identifiable individuals, yet both courts affirmed the defendants' conviction and/or affirmed denial of their motion to dismiss the indictment. Likewise here, although a single, specific identifiable individual is not named in the Indictment, the Indictment specifically refers to the victim as a Federal officer, Federal law enforcement officer, and a Federal law enforcement officer with the U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement. Consistent with *Stevens* and *Wheeler*, the Defendant's motion should be denied.

**C. The Defendant is able to assert a double jeopardy defense.**

Contrary to the Defendant's assertions, nothing in the Indictment prevents him from asserting a double jeopardy defense in future prosecutions. It is clear what threatening communications and solicitations are at issue. Therefore, the Defendant's motion should be denied.

**III.    CONCLUSION**

As the Court can see in the Indictment, the Defendant was (1) put on notice of each element the United States must prove to meet its burden as to Counts One and Two of the Indictment, (2)

18

put on fair notice of the charges against which he must defend, and (3) able to assert a double jeopardy defense. Therefore, the United States respectfully requests the Court deny the Defendant's Motion to Dismiss Indictment.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

s/      *T. Cameron McEwen*
T. CAMERON MCEWEN
AL BAR # 7161-R67M
Assistant United States Attorney
520 South Denison
Muskogee, OK 74401
Telephone: (918) 684-5100
Fax: (918) 684-5150
Cameron.McEwen@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

Jarred L. Jennings, Attorney for the Defendant
Barbara L. Woltz, Attorney for the Defendant
Neil D. Van Dalsem, Attorney for the Defendant
Nicole D. Herron, Attorney for the Defendant

s/      *T. Cameron McEwen*
T. CAMERON MCEWEN
Assitant United States Attorney

19